## AFFIDAVIT IN SUPPORT OF PROPOSED CRIMINAL COMPLAINT

I, Tim Patterson, Special Agent, Homeland Security Investigations, being duly sworn, state:

### INTRODUCTION

1. I make this affidavit in support of an application for a proposed criminal complaint against Emily Suzanne Cain alleging smuggling of human fetal specimens.

2. On or about October 15, 2018, Cain mailed a package labeled as school teaching aids and t-shirts that in fact contained human fetal specimens, and Cain knew the package was human fetal matter. Cain mailed the package, addressed to the United Kingdom, in Colorado, and it arrived and was present in the Northern District of California from October 17-24, 2018. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Cain violated 18 U.S.C. § 554 as set forth in detail below.

3. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents and witnesses. This affidavit does not set forth all of my knowledge about this matter; it is intended to only show that there is sufficient probable cause for the requested warrant.

### AFFIANT BACKGROUND

4. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI), previously known as Immigration and Customs Enforcement, assigned to the office of the Resident Agent in Charge, San Francisco International Airport, and have been employed by HSI since 2003. Prior to my employment with HSI, I was employed as a United States Border Patrol Agent since 1999. I have completed Customs Basic Enforcement School training at the Federal Law Enforcement Training Center in Brunswick, Georgia and the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia.

5. I am an investigator and law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am currently responsible for investigating violations of

1

federal criminal statutes, including cases involving illicit exports from the United States. I have received training in techniques for investigating violations of Title 18, U.S.C., including specifically 18 U.S.C. §554. In the course of the investigation described herein, I have consulted with other federal agents, including HSI Agents, U.S. Postal Agents, Federal Aviation Administration officers and U.S. Customs and Border Protection (CBP) Officers. These law enforcement officers and agents have experience in investigating export violations in mail facilities and/or aircraft.

## APPLICABLE STATUTES

6. Under 18 U.S.C. § 554, it is a crime to knowingly export or send from the United States, or attempt to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States.

7. Under 42 U.S.C. § 289 g-2(a), it shall be unlawful for any person to knowingly acquire, receive, or otherwise transfer any human fetal tissue for valuable consideration if the transfer affects interstate commerce. Under 42 U.S.C. § 289 g-2 (e) (3), the term "valuable consideration" does not include reasonable payments associated with the transportation, implantation, processing, preservation, quality control, or storage of human fetal tissue. Under 42 U.S.C. § 289g-1(g), the term "human fetal tissue" means tissue or cells obtained from a dead human embryo or fetus after a spontaneous or induced abortion, or after a stillbirth.

8. Title 19 U.S.C. § 1583 (a) states that for purposes of ensuring compliance with the Customs laws of the United States and other laws enforced by the Customs Service, a Customs officer may, subject to the provisions of this section, stop and search at the border, without a search warrant, mail of domestic origin transmitted for export by the United States Postal Service and foreign mail transiting the United States that is being imported or exported by the United States Postal Service.

## FACTS SUPPORTING PROBABLE CAUSE

9. As noted above, on or about October 15, 2018, Cain mailed a package labeled as school teaching aids and t-shirts that in fact contained human fetal specimens, and Cain knew the

2

package was human fetal matter. Using the United States Postal Service (USPS), Cain mailed the package in Canon City, Colorado. Cain's package was assigned a USPS tracking number of CH052186708US. Cain's package went from Canon City, Colorado to the USPS's Denver, Colorado Distribution Center on or about October 16, 2018 to the USPS's ISC San Francisco, California facility on or about October 17, 2018.

10. On October 24, 2018, CBP's San Francisco International Airport West Bay Cargo personnel discovered a parcel with USPS tracking number CH052186708US. The package was located in the final outbound parcel staging area of the United States Post Office located at the San Francisco International Airport (SFO) just prior to being loaded onto an International Flight to London, England.

11. The Customs Declaration Form CP-72 contains a signature line that certifies that the package does not contain any undeclared dangerous articles, or articles prohibited by legislation, or by Customs or Postal Regulations. The form further states that the sender has met all export filing requirements and that the package may be opened on an official capacity. In the case of the package discovered by CBP at SFO's final outbound parcel staging area on October 24, 2018 described above, there was no signature on the Form CP-72.

12. The Form CP-72 accompanying the package described its contents as "school teaching aides & t-shirt." The sender's address on the Form CP-72 was Emily Cain at P.O. Box 1717 Canon City, CO, but the sender's address on the package itself was listed as Emily Cain P.O. Box 604 Westminster, CO. The recipient's address on the package was an individual with an address in Southampton, United Kingdom.

13. Based on the above-stated facts, CBP performed an x-ray on the package at the Air Mail Facility, and the x-ray revealed what appeared to be a human shape.

14. This package was selected for physical exam due to inconsistencies between the description of its contents and the x-ray image. During the physical inspection, CBP personnel encountered three glass containers, the contents of which appeared to be three human fetuses.

15. There was a card in the package, and it included a handwritten note stating the

3

sender was sorry for the delay, but the sender had issues opening the "Big Block". The sender further stated the contents were beautiful and offered a complimentary t-shirt. The card was signed "Emily". The card had "G. Howard McGinty Director and Curator of McGinty Fine Oddities" printed on the card. The card depicted a logo of a skull and a picture of McGinty. Also in the box was a T-shirt that displayed the image of the Purgatory Museum and the words "Real Shrunken Head".

16. On October 29, 2018, the USPS advised that both P.O. Boxes, Westminster and Canon City, came back as registered to Glenn McGinty.

17. On October 31, 2018, the San Mateo County Coroner's Office accepted custody of the contents of the three glass containers in Cain's package. On November 1, 2018, the San Mateo County Coroner positively identified the contents of the three glass containers as human remains.

18. On November 5, 2018, the CBP lab in San Francisco advised that they recovered multiple latent prints off the interior of the box, plastic bin, T-shirt, and card. These fingerprints were sent for comparison analysis to the CBP Houston Laboratory SW (South West) Regional Science Center in Houston, Texas. On November 19, 2018, fingerprint results matched that of Cain on the plastic bin, return address label bearing Cain's name, and packaging. A print from an unspecified location on the package also came back as matching Glenn McGinty.

19. On November 14, 2018, USPS provided HSI with two pertinent audio USPS customer inquiry calls.

20. The following is a summary of the first call, which took place on October 30, 2018. The caller identified herself as Cain and said she needed to check the status of a package which has been held up in San Francisco for about two weeks. Cain confirmed the tracking number for her parcel was CH052186708US, which was the tracking number for the package seized on October 24, 2018 at SFO. The representative stated the parcel received customs clearance and that there did not appear to be any additional information. Cain said the recipient is "getting a little antsy." Cain added she thought "there was no customs leaving the country."

4

The representative then asked Cain for her address, phone number, and email address. CAIN initially gave the address of P.O. Box 604, Westminster, Colorado, a phone number of 720-394-3957, and email address of emz8181@gmail.com. The representative stated the P.O. Box and city were not correct and Cain then gave the P.O. Box 1717 adding "we have two P.O. boxes." Cain was then asked for the recipient's information which Cain stated she only had the name with her but not the address. Cain was directed to call back with the recipient's address.

21. The following is a summary of the second call, which took place on November 2, 2018. Cain stated she was following up on her previous attempt to check the status of the package. Cain again provided the tracking number that matched the tracking number on the package seized on October 24, 2018. Cain stated she called to provide the recipient's address. Cain verified her P.O. Box in Canon City, Colorado and provided the recipient's name and address in the United Kingdom. The representative stated the inquiry will continue and can take up to 30 days. Cain again stated she did not realize there was customs for outbound packages.

22. On November 29, 2018, HSI executed a federal search warrant approved by this Court for the Facebook accounts of Emily Cain and Glenn McGinty/McGinty Fine Oddities (bearing Facebook User IDs 100004670551363 and 261473167632545 respectively). Facebook responded on December 19, 2018 and provided HSI with an electronic copy of all retained electronic communication associated with the accounts. Cain's Facebook communications contain additional confirmation that she engaged in the sale and shipping of fetal specimens.

23. For example, on August 8, 2018, Cain informed another Facebook user that she recently acquired a collection of three fetal wet specimens and one fetal skeleton wet specimen from a university lab collection and sent 7 photos. These photos depict the 3 fetuses seized by CBP in San Francisco and an additional fetal skeleton not encountered by CBP. Cain stated she would sell all four specimens for $20,000. The other Facebook user does not agree to purchase the four specimens.

24. Cain's messages to this Facebook user include these statements: "Absolutely! I'm always happy to show you. Please never hesitate to check in with me and see what we have.

5

We don't always post publicly. Especially with pieces like these..." and "...too controversial to be up everywhere, for everyone to see. I try to keep them for the special clients and others we know may have interest in them."

25. On August 11, 2018, Cain sent pictures of 4 fetuses to another Facebook user. The photos depicted the 3 fetuses seized by CBP in San Francisco and an additional female fetus with placenta. On August 16, 2018, Cain sold a male fetus to this Facebook user for $500. In a message on September 6, 2018, the purchaser confirmed arrival of the package with the fetus.

26. On August 25-26, 2018, Cain informed another Facebook user that she acquired multiple human bones and fetuses and they are for sale. Cain posted multiple pictures of bones and fetuses, which included photos of the three fetuses seized by CBP in San Francisco, and she explained that she recently purchased the fetal specimens from a female friend who is the head of the biomed department for a university who is downsizing and recently picked them up in a U-Haul trailer.

27. On March 12, 2019, HSI sent the Department of Medical Education at Creighton University in Omaha, Nebraska two pictures originating from Cain's Facebook page, including one picture depicting the three fetuses seized by CBP on October 24, 2018.

28. On March 19, 2019, the department confirmed that the three fetuses depicted belonged to the University and originated from the anatomy department. The anatomy department believes that the fetuses were stillborn and had been donated to the university between 1920 and 1930. The university stated that if the fetuses were no longer going to be kept by the university, policy dictates the fetuses are to be cremated and not sold.

## CONCLUSION

29. Based on the information set forth above, I believe, as set forth herein, there is probable cause to believe that Cain violated 18 U.S.C. § 554, Smuggling goods from the United States, because the transfer of human fetal tissue by international air shipment in exchange for

///

valuable consideration, or an attempt at such a transfer, is contrary to federal law.

Tim Patterson
Special Agent
Department of Homeland Security – Homeland Security Investigations

Subscribed and sworn before me on this ___17___ day of May, 2019

HONORABLE SALLIE KIM
United States Magistrate Judge